UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| JANA L.M. SMITH, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 4:19-cv-00940-SNLJ |
| | ) |
| ANDREW M. SAUL, | ) |
| Commissioner of the Social Security | ) |
| Administration, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM AND ORDER**

The Commissioner of the Social Security Administration denied plaintiff Jana Smith's applications for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401, *et seq*. Smith now seeks judicial review. The Commissioner opposes the motion. The issues being fully briefed, and for the reasons set forth, this Court will **AFFIRM** the Commissioner's decision.

**I.      Procedural History**

Smith's application was denied at the initial determination level.  She then appeared before an Administrative Law Judge ("ALJ").  The ALJ found Smith is not disabled because her symptoms were not supported by the medical evidence available. Smith then filed a request for review of the ALJ's decision with the Appeals Council of the Social Security Administration, which was denied.  Thus, the decision of the ALJ stands as the final decision of the Commissioner.  *See* 20 C.F.R. § 404.981.  Smith now seeks review by this Court pursuant to 42 U.S.C. § 405(g).

1

## II. Disability Determination—The Five-Step Framework

A disability is defined as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). A claimant has a disability "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id.* § 423(d)(2)(A).

The Commissioner follows a five-step sequential process when evaluating whether the claimant has a disability. 20 C.F.R. § 404.1520(a)(1). First, the Commissioner considers the claimant's work activity. If the claimant is engaged in substantial gainful activity, the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see whether "the claimant has a severe impairment [that] significantly limits [the] claimant's physical or mental ability to do basic work activities." *Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010); *see also* 20 C.F.R. § 404.1520(a)(4)(ii). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007); *see also* 20 C.F.R. §§ 404.1520(c), 404.1520a(d).

2

Third, if the claimant has a severe impairment, the Commissioner considers the impairment's medical severity.  If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, the claimant is considered disabled, regardless of age, education, and work experience.  20 C.F.R. §§ 404.1520(a)(4)(iii), (d).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, the Commissioner assesses whether the claimant retains the "residual functional capacity" (RFC) to perform his or her past relevant work.  20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545(a)(5)(i). An RFC is "defined as what the claimant can still do despite his or her physical or mental limitations." *Gann v. Berryhill*, 864 F.3d 947, 951 (8th Cir. 2017); *see also* 20 C.F.R. § 404.1545(a)(1). While an RFC must be based "on all relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations," an RFC is nonetheless an "administrative assessment"—not a medical assessment—and therefore "it is the responsibility of the ALJ, not a physician, to determine a claimant's RFC." *Boyd v. Colvin*, 831F.3d 1015, 1020 (8th Cir. 2016). Thus, "there is no requirement that an RFC finding be supported by a specific medical opinion." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016).  Ultimately, the claimant is responsible for *providing* evidence relating to his RFC and the Commissioner is responsible for *developing* the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources."  20 C.F.R.

3

§ 404.1545(a)(3).  If, upon the findings of the ALJ, it is determined the claimant retains the RFC to perform past relevant work, he or she is not disabled.  20 C.F.R. § 404.1520(a)(4)(iv).

Fifth, if the claimant's RFC does not allow the claimant to perform past relevant work, the burden of production to show the claimant maintains the RFC to perform work that exists in significant numbers in the national economy shifts to the Commissioner. *See Brock v. Astrue*, 574 F.3d 1062, 1064 (8th Cir. 2012); 20 C.F.R. § 404.1520(a)(4)(v). If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, the Commissioner finds the claimant not disabled.  20 C.F.R. § 404.1520(a)(4)(v).  If the claimant cannot make an adjustment to other work, the Commissioner finds the claimant disabled.  *Id.*  At Step Five, even though the *burden of production* shifts to the Commissioner, the *burden of persuasion* to prove disability remains on the claimant. *Hensley*, 829 F.3d at 932.

### III. The ALJ's Decision

At Step One, the ALJ found Smith met the insured status requirements through December 31, 2016, and had not engaged in substantial gainful activity since July 24, 2015. (Tr. 17). At Step Two, the ALJ found Smith suffers from six medically determinable impairments: (1) Raynaud's disease; (2) scleroderma; (3) lupus; (4) esophagitis; (5) hypertensive kidney disease; and (6) polycystic ovarian syndrome. (Tr. 17). At Step Three, the ALJ concluded Smith does not have an impairment or combination of impairments that meets or equals one of the presumptively disabling impairments listed in the regulations. (Tr. 19).

4

Next, in beginning the analysis of Step Four, the ALJ determined Smith's RFC.[1] The ALJ found that

> [t]he claimant has the residual functional capacity to perform light work as defined in 20 C.F.R. § 404.1567(b) except that she could not lift, carry, push, or pull more than 20 pounds occasionally and 10 pounds frequently. She could sit, stand, or walk for 6 hours in an 8-hour day. She could frequently handle and finger bilaterally. She could never work at unprotected heights or near hazards and could never have exposure to extremes in temperature or concentrated exposure to pulmonary irritants.

(Tr. 19). As part of this determination, the ALJ found Smith's allegations about her physical symptoms' intensity, persistence, and limiting effects were not consistent with the medical records when considered as a whole. (Tr. 20). The ALJ chronicled a number of diagnostic tests that were either benign or normal, as well as various provider examinations that were also largely normal. (Tr. 21). The ALJ further highlighted various daily activities that Smith could perform, as indicated by her husband. (Tr. 22). Smith's testimony that she "spends most of her days lying down" was, thus, rejected in view that it was "not explained by any objective findings." (Tr. 21). All in all, the ALJ was simply unconvinced by Smith's allegations given an essentially unremarkable longitudinal record that did not lend support to the sort of limitations Smith purported to have. (Tr. 21-22).

Having made an RFC determination, the ALJ continued on through Step Four to determine whether Smith could perform her past relevant work in light of her designated

---

[1] Determining claimant's RFC is "essential to properly completing steps four and five." *Swink v. Saul*, 931 F.3d 765, 769 (8th Cir. 2019). However, the RFC is determined at step four—a point in which the burden of proof rests with claimant. *See Scott v. Berryhill*, 855 F.3d 853, 855 (8th Cir. 2017); *Goff v. Barnhart*, 421 F.3d 785, 793 (8th Cir. 2005).

5

RFC. The ALJ determined Smith could perform past relevant work. (Tr. 22). It was noted that Smith was previously a personal banker and teller—sedentary and light exertional jobs, respectively. (Tr. 22). She had also done some work as a customer service representative and software programmer, both sedentary jobs. (Tr. 23). The ALJ agreed with the vocational expert that, given Smith's RFC, she was still able to perform all of these jobs "as actually and generally performed." (Tr. 23, 55). Accordingly, the ALJ concluded Smith was not disabled at Step Four.

## IV. Standard of Review

The Court must affirm the Commissioner's decision if it is supported by substantial evidence on the record as a whole.  42 U.S.C. § 405(g).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019). "[T]he threshold for such evidentiary sufficiency is not high." *Id*. Under this test, the court "consider[s] all evidence in the record, whether it supports or detracts from the ALJ's decision." *Reece v. Colvin*, 834 F.3d 904, 908 (8th Cir. 2016). The court "do[es] not reweigh the evidence presented to the ALJ" and will "defer to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial evidence." *Id*. The ALJ will not be "reverse[d] merely because substantial evidence also exists in the record that would have supported a contrary outcome, or because [the court] would have decided the case differently." *KKC ex rel. Stoner v. Colvin*, 818 F.3d 364, 370 (8th Cir. 2016).

## V.  Discussion

Smith makes one narrow challenge in seeking reversal of the ALJ's decision. She says the ALJ fails to "take account of all limitations by [her] treating physician, Dr. [Michael] Schoenwalder." In other words, the ALJ erred by not giving controlling weight to Schoenwalder's opinions. These opinions came in the form of a medical source statement (MSS), in which a number of functional limitations were described. (Tr. 647-650). The ALJ gave only "some weight" to the MSS, explaining the opinions contained therein were "internally inconsistent" and also "not consistent with other findings … [and] with the objective findings." (Tr. 21-22). The MSS was described as internally inconsistent in that it stated "claimant could occasionally lift less than 10 pounds, but then stated that the claimant could constantly lift 10 to 50 pounds." (Tr. 22). Further, the ALJ highlighted largely benign and/or normal diagnostic results—including an esophagogastroduodenoscopy, echocardiograms, pulmonary function tests, and x-rays—as reasons to disagree with the MSS's conclusions. (Tr. 21). Finally, the ALJ juxtaposed Smith's own testimony that she can do very little—mostly "spend[ing] time lying either in bed or on the couch"—with that of her husband, who indicated Smith could care for their children, cook, do household chores (in "spurts" to "avoid being on her feet too long"), drive herself, go shopping, and handle finances. (Tr. 240-247).

A treating physician's opinion is given "controlling weight" when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence." 20 C.F.R. § 404.1527(c)(2) (2012). However, when "the treating physician's opinion is internally inconsistent or conflicts

7

with substantial evidence contained within the medical record as a whole, the ALJ may afford it less weight." *Pemberton v. Saul*, 953 F.3d 514 (8th Cir. 2020). When a treating physician's opinions are not given controlling weight, the ALJ must give "good reasons" for the weight ultimately assigned; this requires consideration of various factors like length of treatment history, nature of the treatment relationship, supportability of the opinion, consistency of it, the physician's specialization or non-specialization, and "other factors." 20 C.F.R. §§ 404.1527(c)(2), (c)(2)-(c)(6) (2012).

A separate issue is *how* a treating physician's opinions are presented. When those opinions come in the form of conclusory, undetailed statements—generally called "medical source statements"—the Eighth Circuit has repeatedly concluded the ALJ is right to discount or even disregard them. *See Chesser v. Berryhill*, 858 F.3d 1161, 1165 (8th Cir. 2017); *Anderson v. Astrue*, 696 F.3d 790, 793 (8th Cir. 2012); *Johnson v. Astrue*, 628 F.3d 991, 994 (8th Cir. 2011). This is because an RFC determination is one the ALJ must make, not a physician, and that task requires consideration of "all the relevant evidence," not just one physician's opinions. *Nash v. Commissioner, Soc. Sec. Admin.*, 907 F.3d 1086, 1089 (8th Cir. 2018); *Johnson*, 628 F.3d at 994. Thus, when a functional limitation is included in an MSS, but is "not reflected in any treatment notes or medical records," the ALJ is right to disregard that limitation as conclusory and unsupported by the total record. *Anderson*, 696 F.3d at 794 (ALJ did not err in disregarding treating physician's report on claimant's functional limitations due to pain where report merely referenced "a lot of joint pain" due, generally, to fibromyalgia).

8

Smith focuses primarily on Schoenwalder's opinion that Smith would "need to elevate [her] legs to 90 degrees for 30% of the workday." (Tr. 649). Smith says such a limitation would "surely derogate against the available jobs." This Court's own review of the record, though, reveals no support for such a limitation—and the MSS provides none. Thus, the ALJ would have to adopt Schoenwalder's opinions in blind faith, which is contrary to the standard that the ALJ's decision be supported by substantial evidence upon a cumulative review of the total record. *See Wildman v. Astrue*, 596 F.3d 959, 963-964 (8th Cir. 2010).

Not once does Schoenwalder indicate in his notes that Smith should keep her legs elevated to reduce pain. (Tr. 321-349, 620-650). Rather, he mostly describes normal musculoskeletal exams and "stable [and] well-controlled" symptoms. (Tr. 328-329, 333, 339, 341-342, 345, 624-625, 635-636, 638-639, 642, 644). There's even mention of engaging in an "exercise program." (Tr. 329, 635, 639). And, taking a holistic view of the record, it is noteworthy that most diagnostic testing and examinations by other providers were normal or nearly so with only occasional swelling mentioned. (Tr. 302-03, 317-318, 364-365, 398, 401, 403, 406-408, 427-429, 482, 491-492, 494-524, 530-531, 537). The only reference to therapeutic elevation this Court could find related to Smith elevating her head at night to address heartburn-related symptoms—an issue obviously having nothing to do with her legs. (Tr. 372, 378).

Smith's argument in reversing the ALJ's decision is a typical attempt to point to something—anything—in the record that supports a claim of disability. It is well-recognized that the record will often include both supportive and detracting evidence.

9

*See, e.g., Wildman*, 596 F.3d at 964. This is precisely why the Eighth Circuit has made clear that the courts "will not reverse the decision merely because substantial evidence would have also supported a contrary outcome." *Id*. The question for this Court comes down to whether the ALJ had "good reasons" to discount Schoenwalder's opinions on Smith's functional limitations—specifically, as she focuses upon, the need to frequently elevate her legs. 20 C.F.R. §§ 404.1527(c)(2) (2012). The good reason is this: that limitation isn't reflected in the record. That is what the ALJ concluded, and this Court finds no error in that respect.[2]

Accordingly,

**IT IS HEREBY ORDERED** that the Commissioner's decision is **AFFIRMED** and plaintiff Jana Smith's complaint (ECF #1) is **DISMISSED with prejudice**. A separate judgment accompanies this Order.

So ordered this 7th day of July 2020.

_____
STEPHEN N. LIMBAUGH, JR.
UNITED STATES DISTRICT JUDGE

---

[2] Smith makes some tangential references to the fact that the ALJ never directly spoke of the leg elevation limitation itself. That's true. But, the ALJ is not required to reference every limitation mentioned by a physician. If it is not supported in the record, the ALJ is free to disregard it with little fuss or explanation. *See McCoy v. Astrue*, 648 F.3d 605, 615 (8th Cir. 2011) ("[W]e do not require an ALJ to mechanically list and reject every possible limitation."). When considering the ALJ's decision and the record together, it is clear the ALJ disregarded every limitation mentioned by Schoenwalder that had no evidentiary support.